**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION: NO. __________**

SCOTT NIELSEN and TROY GRAVES,

Plaintiffs,

v.

HARRY M. WOMACK, individually and d/b/a HALLELUJAH HARRY'S SALSA; and W.E. MARKETING, LLC, a Florida limited liability company,

Defendants.

**COMPLAINT**

Plaintiffs Scott Nielsen and Troy Graves ("Plaintiffs"), by and through undersigned counsel, allege against Defendants Harry M. Womack ("Womack") and W.E. Marketing, LLC ("W.E. Marketing") (collectively, "Defendants") as follows:

1. Plaintiff Scott Nielsen is an individual residing in Haywood County, North Carolina.
2. Plaintiff Troy Graves is an individual residing in Haywood County, North Carolina.
3. Defendant Harry M. Womack is an individual residing in Waynesville, Haywood County, North Carolina, at 50 Destination Dr., Waynesville, NC 28786. Womack does business as, and operates, Hallelujah Harry's Salsa.
4. Defendant W.E. Marketing, LLC is a limited liability company organized under the laws of the State of Florida, with its principal place of business at 50 Destination Dr., Waynesville, NC 28786 and a registered agent in Florida. Upon information and belief, W.E. Marketing is owned and controlled by Harry M. Womack.

**NATURE OF THE ACTION**

5. This action arises out of Defendant Womack's exclusion of his partners from a salsa business they built together, his refusal to account to them, and the unauthorized exploitation of copyrighted artwork authored by Plaintiff Nielsen and other materials that Plaintiffs created for that business.

6. Plaintiffs Scott Nielsen and Troy Graves collectively hold a 45% ownership interest in the business known as Hallelujah Harry's Salsa (the "Business"), which they and Womack operated as partners.

7. Although the parties never put their agreement in writing, Womack agreed that Plaintiffs would together hold a 50% interest in the Business in exchange for their work to build and grow it. The parties later agreed to adjust Plaintiffs' collective interest to 45% so that a 5% interest could be made available to a prospective bottler. Womack confirmed Plaintiffs' ownership interest on multiple occasions and in front of multiple witnesses.

8. Over the life of the Business, Plaintiffs developed the salsa recipe and its formulations; Plaintiff Nielsen authored the logo artwork, and Plaintiff Nielsen either fully designed or substantially designed the other branding, labels, packaging, and promotional materials; built and administered the website and social media accounts; secured retail contracts, including with Ingles and other retailers; and invested substantial personal funds in the Business.

9. Plaintiffs provided thousands of hours of work performing these actions without pay as they believed they would be compensated with the eventual profits of the Business.

10. Notwithstanding Plaintiffs' ownership and central role, Womack excluded them from the Business, refused to provide any ownership or financial information, changed the credentials to the Business's website, and cut off Plaintiffs' access to the property they built.

11. Defendant W.E. Marketing, a Florida limited liability company, has reproduced, displayed, and used Plaintiff Nielsen's copyrighted artwork, and unauthorized derivatives of it, without authorization, including in connection with pending federal trademark application USPTO Serial No. 99759919 and in its own commercial use of the Business's brand.

**JURISDICTION AND VENUE**

12. This Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because Plaintiffs assert claims arising under the Copyright Act, 17 U.S.C. §§ 101 et seq., and the Lanham Act, 15 U.S.C. §§ 1051 et seq. This Court has jurisdiction under 28 U.S.C.

§ 1338(b) over Plaintiffs' state-law unfair competition claim because it is joined with a substantial and related claim under the copyright and trademark laws.

13. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' state-law claims because they are so related to the federal claims that they form part of the same case or controversy.

14. This Court has personal jurisdiction over Womack because he resides in and conducts business in this District.

15. This Court has personal jurisdiction over W.E. Marketing because it has purposefully directed its activities toward North Carolina, transacts business in this District, and committed acts of infringement causing harm in this District.

16. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District and Defendant Womack resides in this District, and under 28 U.S.C. § 1400(a) with respect to the copyright claims.

## FACTUAL ALLEGATIONS

### *Formation and Operation of the Partnership*

17. Plaintiffs and Womack agreed to operate the Business together as partners. That agreement arose from the mutual consent of the parties, their course of dealing, and Plaintiffs' substantial contributions to creating and operating the Business.

18. Plaintiffs Nielsen and Graves own and operate a retail shop, Cabbage Rose, in Maggie Valley, North Carolina. Plaintiffs and Womack and his wife, Deb Womack, were close friends and regularly dined together, often once or twice a week.

19. On an evening in or about November 14 2024, at Womack's home, Womack asked Plaintiffs to taste a salsa he had made. Plaintiff Nielsen asked whether Womack had considered selling it. Womack said he might and told Plaintiffs that he would call it "Hallelujah Harry's."

20. That night, on his own initiative, Plaintiff Nielsen created a label design and jar concept for the product, which is the Registered Work defined below. The next day, November 15, 2024, at Cabbage Rose, he showed the design to Womack, who approved it.

21. After November 15, 2024, but before the tasting with Cabbage Rose employees below, the Plaintiffs started talking with Womack concerning a partnership.

22. The week following November 15, 2024, Womack asked Cabbage Rose employees to taste the salsa. One of them, Lucinda Ledford, told Womack that it tasted like a commercially available Mrs. Wages seasoning mix. Womack first denied it and later admitted to Plaintiffs that he was using the Mrs. Wages product. Plaintiff Nielsen specifically told Womack that if Womack wanted to go into business with Plaintiffs, then the recipe would need to be redone. Womack agreed and this conversation was observed by the Cabbage Rose employees.

23. Womack told Plaintiff Nielsen that he wanted to make the salsa at home and sell it at Cabbage Rose. Plaintiff Nielsen ordered and paid for labels and T-shirts and proposed that the Business set up a Facebook page and a website.

24. Plaintiff Nielsen told Womack that he believed Plaintiffs could grow the Business and asked for a one-half interest in it in exchange. Womack agreed and told Plaintiff Nielsen that Plaintiffs together owned 50% of the Business. Womack later acknowledged many times, in front of others, that Plaintiffs were his partners and owners of the Business. These occasions included repeated statements in front of Cabbage Rose employees.

25. Relying on that agreement, Plaintiff Nielsen paid with his own funds for design software and programs, the Business's GoDaddy website, business cards for himself and Womack, labels, T-shirts, and a promotional banner. He also created the Business's artwork, the "Chef Gio" character, an original song, and the slogans "You Have Been Sauced by Harry" and "Taste the Hallelujah."

26. Because Plaintiff Nielsen would not continue as a partner unless the Business used an original recipe, he wrote a new recipe for the Business. At Womack's request, he later converted it into measurements by weight in grams. Womack prepared that recipe several times and added pequin peppers. Plaintiff Nielsen keeps the written versions of the recipe.

27. In or about early spring of 2025, Plaintiff Nielsen met with Pat Bowman, the manager of the Ingles store in Waynesville, about placing the product in Ingles stores. He then prepared research and a presentation, which he gave to Womack, Deb Womack, and Plaintiff Graves

at a dinner. As a result of this, Womack asked Plaintiffs to make business cards and pay for them out of pocket.

28. On September 25, 2025, Plaintiff Nielsen arranged a meeting with Pat Bowman, manager of the Ingles store in Waynesville, North Carolina, and asked Womack and Deb Womack to attend wearing Hallelujah Harry's T-shirts, which Plaintiff Nielsen had designed and paid for. Before the meeting, Plaintiff Nielsen wrote a script for the presentation and went over it with Womack in the car on the way to the store. At the meeting, Womack and Plaintiff Nielsen presented the Business together and told Mr. Bowman that the Business had a bottler and would be ready to supply product in about two months. Plaintiff Nielsen left Mr. Bowman a letter on behalf of the Business identifying Womack as Chief Executive Officer and Plaintiff Nielsen as Marketing Director. Mr. Bowman explained how to contact Ingles corporate to get the product placed in Ingles stores, and Plaintiff Nielsen followed up on that guidance.

29. The Business sold its salsa at Cabbage Rose for $10 per jar in cash. Womack collected the proceeds and told Plaintiff Nielsen that he was putting the money into a separate account. Upon information and belief, Womack also collected cash from sales at Ace Hardware and at Teague's. Plaintiffs received no distributions.

30. On or about March 22, 2026, at a dinner at Womack's home celebrating Womack's birthday, attended by Womack, Deb Womack, Khai Mahala, Diana Mahala, and Plaintiffs, the group discussed the Business's success and toasted to its future, including a goal of selling the Business within about two years to a company such as Frito-Lay for about $25 million. Deb Womack called Plaintiff Nielsen the Business's "best marketing director," and Womack told Plaintiffs they were "great partners."

31. On or about April 24, 2026, while Plaintiff Nielsen was driving Womack to an in-store tasting, Womack suggested that it might be time for the Business to begin disbursing money. Plaintiff Nielsen responded that the cash should stay in the Business so it could supply additional Ingles stores quickly.

32. Womack also held Plaintiffs out as his partners to third parties, including at in-store tastings, at Plaintiffs' first meeting with the Ingles store manager, and at other public

outings. Persons who heard Womack describe Plaintiffs as partners include Lucinda Ledford, Becky Shick, Susan Wilkens, Ricky Mahoney, and an employee of Ace Hardware.

33. Although, Womack initially agreed that Plaintiffs together held a 50% interest in the Business. Following the September 25, 2025 meeting with Mr. Bowman described in Paragraph 28, and in connection with engaging a bottler so the Business could supply product to Ingles, the parties agreed that Plaintiffs would reduce their collective interest to 45% so that a 5% interest could be made available to the prospective bottler. Womack confirmed Plaintiffs' 45% interest on or about June 12, 2026, as discussed below. Plaintiff Nielsen identified and contacted potential co-packers, kept notes of those calls, and referred one of them to Womack. The Business later used that co-packer.

34. On or about June 12, 2026, at a dinner at Bosu's restaurant, attended by the same persons, the group toasted Plaintiff Nielsen's success in placing the Business's salsa in five Ingles stores. At that dinner, Womack stated that Plaintiffs held a 45% interest in the Business.

35. Plaintiffs devoted thousands of hours and significant personal funds to the Business, including:

a. developing and refining the salsa recipe and its formulations;

b. designing and producing the branding, labels, artwork, packaging, and promotional materials, including the logo artwork authored by Plaintiff Nielsen;

c. building, hosting, and administering the website and the Facebook and Instagram accounts;

d. creating advertisements, signage, and sales content;

e. securing and servicing retail contracts, including with Ingles and other retailers;

f. conducting in-store tastings and managing orders and deliveries;

g. introducing the bottler or co-packer;

h. paying out of pocket for domain and hosting fees, label production, design software and subscriptions, and other business costs;

i. creating the “Chef Gio” character, an original song, and the slogans “You Have Been Sauced by Harry” and “Taste the Hallelujah”;

j. creating a QR code, spreadsheets, and delivery routes; and

k. other actions to be shown at trial.

36. Plaintiffs assisted with making the salsa formula as the original version produced by Womack was the exact recipe of another salsa brand, which was identified by one of Plaintiffs’ employees.

37. This work built the Business, its goodwill, its customer relationships, and its revenue.

38. Plaintiff Nielsen personally paid more than $5,000 in Business expenses, including website and hosting costs, design software and programs, labels, business cards, T-shirts, order pads, and a promotional banner.

***Creation and Ownership of the Copyrighted Works***

39. Plaintiff Nielsen authored the original logo artwork used by the Business, as shown as Figure 1 below (the “Registered Work”). Plaintiffs also created other branding, label, packaging, website, and promotional materials for the Business (together with the Registered Work, the “Brand Materials”). Examples of Brand Materials include Figures 2-3.




Fig. 1: Registered Work




Fig. 2: Example of Brand Materials




Fig. 3: Example of Brand Materials

40. Plaintiff Nielsen created the Registered Work and fixed it in a tangible medium of expression on or about November 15, 2024.

41. Plaintiff Nielsen is the sole author and owner of the Registered Work. He was not an employee of Womack or W.E. Marketing, the Registered Work is not a work made for hire, and Plaintiff Nielsen never signed a written assignment or exclusive license of any rights in it to Womack, W.E. Marketing, or anyone else.

42. Plaintiff Nielsen owns U.S. Copyright Registration No. VA 2-527-443, effective October 15, 2026, covering the Registered Work. A copy of the Certificate is attached as **Exhibit 3**.

***Exclusion and Refusal to Account***

43. On or about June 26, 2026, while Plaintiff Nielsen drove Womack back from an in-store tasting in Sylva, North Carolina, Womack screamed at Plaintiff Nielsen for the entire drive and told him, in substance, that Plaintiffs "own nothing." Plaintiff Nielsen called Plaintiff Graves during the drive and, fearing for his safety, told Womack he would pull over and

call the police. From that date, Womack excluded Plaintiffs from the Business and from any information about it.

44. Plaintiffs asked Womack directly for basic ownership and financial information. Womack refused to provide it and refused to engage with them.

45. Womack has changed the credentials to the Business's website and cut off Plaintiffs' access to the property they built, including the Business's website, social media accounts, and records.

46. Plaintiff Nielsen created the Registered Work on his own initiative, before the partnership was formed, and received no payment for it. Any permission he gave Womack to use it was oral, nonexclusive, gratuitous, revocable, and limited to use in the Business while Plaintiffs were partners in it. Plaintiff Nielsen never authorized W.E. Marketing to use the Registered Work and never authorized anyone to prepare derivative works from it. Any permission ended no later than June 26, 2026, when Womack excluded Plaintiffs, and Plaintiff Nielsen expressly revoked it on June 26, 2026, during that car ride that Womack did not have authority to use the Registered Work or any artwork produced by Plaintiff Nielsen.

47. By letter dated August 10, 2026, Plaintiffs, through counsel, demanded that Womack produce the books and records of the partnership and meet to address Plaintiffs' ownership interests and share of profits. Womack failed to comply. See **Exhibit 1**.

48. On August 24, 2026, Defendant Womack responded through counsel that no partnership existed. See **Exhibit 2**.

49. Since Plaintiffs were excluded from the Business, and without authorization, Defendants have reproduced, publicly displayed, and distributed the Registered Work, and versions derived from it, in connection with the sale and promotion of salsa. This includes use (a) on Defendants' website, as shown in Exhibits 4–6; (b) on vehicles used by Defendants in operating the business, as shown in Exhibit 5; and (c) on labels, packaging, signage, promotional materials, social media, and other branding materials. These uses are not limited to the examples shown in Figures 2–3 and Exhibits 4–6.

50. Defendants have also created a variation of the Registered Work and displayed it at the top of Defendants' website, as shown at the top of Exhibit 4 (the "Website Variation"). The Website Variation copies the protectable expression of the Registered Work, and is substantially similar to it. The Website Variation, the stylized design submitted with USPTO Serial No. 99759919 (the "Brand Version"), and every other version of the Registered Work that Defendants have prepared or used are referred to collectively as the "Derivative Versions."

51. Defendants' use of the Registered Work and the Derivative Versions, including the Website Variation and the Brand Version, continued after Plaintiffs' August 10, 2026 demand, continued after the Registered Work was registered on October 15, 2026, and continues today.

***W.E. Marketing's Unauthorized Use***

52. Upon information and belief, W.E. Marketing has reproduced, displayed, distributed, and commercially used the Registered Work and the Derivative Versions, including on the website, vehicles, labels, and other branding materials described above, without Plaintiff Nielsen's authorization.

53. Upon information and belief, on April 13, 2026, W.E. Marketing filed a federal trademark application, USPTO Serial No. 99759919, seeking to register the Brand Version, which reproduces and is derived from the Registered Work. This application was filed on April 13, 2026, before the Plaintiffs and Defendant Womack had a dispute, without Plaintiffs' knowledge. It was filed pursuant to Section 1(a) and claims it was first used as early as "01/00/2025". The claimed first-use date of January 2025 precedes any involvement of W.E. Marketing in the Business known to Plaintiffs, and any use at that time was by the partnership.

54. W.E. Marketing did not own the Registered Work, the Brand Version, or the Brand when it applied, and it had no authorization to reproduce, adapt, display, or use the Registered Work or the Brand Version as a source identifier.

55. Neither Plaintiff ever consented to W.E. Marketing's use of the Brand, and Plaintiff Nielsen never consented to its use of the Registered Work or any Derivative Version. All known

activities of the Business were conducted by the partnership, not through W.E. Marketing or any other company.

56. As a result of Defendants' conduct, Plaintiffs have suffered harm, including Plaintiff Nielsen's loss of control over the Registered Work and the Derivative Versions, loss of their rightful share of the Business's profits, marketplace confusion, and diversion of goodwill.

## COUNT I

## BREACH OF PARTNERSHIP AGREEMENT

***(Against Defendant Womack)***

57. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

58. Plaintiffs and Womack formed a partnership to operate the Business, whether by express agreement, mutual consent, or their course of dealing, under N.C. Gen. Stat. § 59-31 et seq., the North Carolina Uniform Partnership Act.

59. As partners, Plaintiffs and Womack owed one another duties under the partnership agreement and under North Carolina law, including the duty to share profits, the duty to provide access to books and records, and the duty of fair dealing.

60. Womack breached the partnership agreement by, among other things, excluding Plaintiffs from the Business, refusing to provide access to books and records, refusing to account, denying Plaintiffs their share of profits, and cutting off Plaintiffs' access to partnership property.

61. As a direct and proximate result of Womack's breaches, Plaintiffs have been damaged in an amount to be proven at trial, exceeding $75,000.

## COUNT II

## BREACH OF FIDUCIARY DUTY AND ACCOUNTING

***(Against Defendant Womack)***

62. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

63. As a partner, Womack owed Plaintiffs fiduciary duties of loyalty and care, including duties to account for profits and property and to refrain from taking partnership opportunities and assets for himself.

64. Womack breached those duties by excluding Plaintiffs, misappropriating partnership property and goodwill, refusing to account, and diverting the Business and its assets, including through W.E. Marketing.

65. Plaintiffs are entitled to a full accounting of the partnership's books, records, revenues, expenses, distributions, and assets from inception to the present, pursuant to N.C. Gen. Stat. § 59-52 and the Court's equitable powers.

66. As a direct and proximate result of Womack's breaches, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT III**

**FRAUD**

***(Against Defendant Womack)***

67. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

68. Womack made material representations to Plaintiffs regarding their ownership interests in, and their entitlement to share in the profits of, the Business, in order to induce Plaintiffs to contribute their labor, creative works, and funds.

69. On or about June 12, 2026, at Bosu's restaurant, in the presence of Deb Womack, Khai Mahala, Diana Mahala, and Plaintiffs, Womack represented that Plaintiffs held a 45% interest in the Business. He made that statement two months after he caused W.E. Marketing to apply, on April 13, 2026, to register the Brand in W.E. Marketing's name alone, and he did not disclose the application to Plaintiffs.

70. The representations were false or were made with reckless disregard for their truth, and Womack knew them to be false or made them with the intent that Plaintiffs rely on them.

71. When Womack made these representations, he did not intend to honor them. While continuing to accept Plaintiffs' unpaid labor and contributions, and without telling Plaintiffs, Womack caused W.E. Marketing, an entity he owns and controls, to file USPTO Serial No. 99759919 on April 13, 2026, claiming the Brand for W.E. Marketing alone.

72. Plaintiffs reasonably relied on Womack's representations to their detriment by contributing thousands of hours of labor, the Recipe, creative works, and personal funds to the Business.

73. As a direct and proximate result of Womack's fraud, Plaintiffs have been damaged in an amount to be proven at trial, and Womack's conduct was willful, wanton, and malicious, entitling Plaintiffs to punitive damages under N.C. Gen. Stat. § 1D-15.

## COUNT IV

## UNJUST ENRICHMENT (Pleaded in the Alternative)

***(Against Defendant Womack)***

74. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

75. In the alternative to Counts I through III, and to the extent no enforceable agreement is found to govern the parties' relationship, Plaintiffs conferred substantial benefits on Womack, including their labor, creative works, funds, and the goodwill and revenue of the Business. This included, among other things, thousands of hours of labor where Womack did not directly pay the Plaintiffs.

76. Womack knowingly accepted and retained those benefits under circumstances in which it would be inequitable for him to retain them without compensating Plaintiffs.

77. Plaintiffs are entitled to recover the reasonable value of the benefits conferred, in an amount to be proven at trial, and to the imposition of a constructive trust over Plaintiffs' proportionate share of the Business and any assets, accounts, domain, and goodwill traceable to Plaintiffs' contributions.

## COUNT V

## COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 106, 501)

***(Plaintiff Nielsen Against Defendants Womack and W.E. Marketing)***

78. Plaintiff Nielsen incorporates the foregoing paragraphs as if fully set forth herein.

79. Plaintiff Nielsen is the sole legal and beneficial owner of a valid copyright in the Registered Work and of the exclusive rights in it under 17 U.S.C. § 106, including the exclusive right to prepare derivative works.

80. Plaintiff Nielsen has registered the Registered Work with the United States Copyright Office, satisfying 17 U.S.C. § 411(a).

81. Without authorization, and outside the scope of any permission granted, Defendants have reproduced, displayed, and distributed the Registered Work, and have prepared, reproduced, displayed, and distributed the Derivative Versions, including the Website Variation and the Brand Version, in violation of 17 U.S.C. § 106(1), (2), (3), and (5). This includes use on Defendants' website, vehicles, labels, packaging, and other branding materials and, as to W.E. Marketing, submission of the Brand Version to the USPTO and its use as a source identifier.

82. Defendants' infringement is willful and ongoing, and it continued after Plaintiff Nielsen's revocation, after Plaintiffs' written demand, and after registration.

83. As a direct and proximate result, Plaintiff Nielsen has suffered damages and Defendants have profited. Plaintiff Nielsen is entitled to his actual damages and Defendants' profits attributable to the infringement under 17 U.S.C. § 504(b), and to costs under 17 U.S.C. § 505.

84. Defendants' continuing infringement is causing Plaintiff Nielsen irreparable harm for which there is no adequate remedy at law. Plaintiff Nielsen is entitled to temporary, preliminary, and permanent injunctive relief under 17 U.S.C. § 502 barring Defendants from further reproducing, displaying, distributing, or using the Registered Work or any derivative of it, and to impoundment and destruction of infringing materials under 17 U.S.C. § 503.

**COUNT VI**

**LANHAM ACT FALSE DESIGNATION OF ORIGIN / UNFAIR COMPETITION (15 U.S.C. § 1125(a))**

***(Against Defendant W.E. Marketing and Womack)***

85. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

86. The brand, name, logo, label artwork, packaging, trade dress, and goodwill associated with Hallelujah Harry's Salsa (collectively, the "Brand") originated with, and were created by and for, the partnership among Plaintiffs and Womack. The Brand and the goods sold under it originate from the partnership, not from W.E. Marketing.

87. Defendants have used the Brand in commerce in connection with the sale, offering for sale, distribution, and advertising of salsa and related goods.

88. Plaintiffs have suffered injury to their own commercial interests in reputation and sales. As 45% owners of the Business, and as the persons who secured and serviced its retail accounts, Plaintiffs have lost their share of the sales W.E. Marketing diverted, and their commercial reputation with Ingles and other retailers has been harmed.

89. Defendants' use of the Brand constitutes a false designation of origin and a false or misleading representation of fact that is likely to cause confusion, to cause mistake, or to deceive consumers, retailers, and the trade as to the origin, source, sponsorship, affiliation, connection, or approval of the goods, in violation of 15 U.S.C. § 1125(a).

90. Specifically, Defendants have falsely designated the origin of the Brand and the goods sold under it as originating with W.E. Marketing, when in fact the Brand and goods originate with the partnership. W.E. Marketing did not create, and has no rightful claim to be the source or origin of, the Brand, and its representation to the contrary (including through its use in commerce and its federal trademark application, USPTO Serial No. 99759919) is false and misleading.

91. Defendants' conduct is likely to cause, and upon information and belief has caused, actual confusion in the marketplace as to the true origin and source of the goods sold under the Brand, and has enabled Defendants to trade on and misappropriate the goodwill built by the partnership.

92. Defendants' acts were committed knowingly, willfully, and in bad faith, with the intent to trade on and misappropriate the goodwill and reputation of the partnership's Brand.

93. Defendants' acts were committed knowingly, willfully, and in bad faith, with the intent to trade on and misappropriate the goodwill and reputation of the partnership's Brand.

94. As a direct and proximate result, Plaintiffs have been damaged, and Plaintiffs are entitled to injunctive relief and damages under 15 U.S.C. §§ 1116–1117.

95. Pursuant to Fed. R. Civ. P. 8(d)(2), the allegations of this Count are pleaded in the alternative to, and without waiver of, Plaintiff Nielsen's copyright claims.

**COUNT VII**

**CONSTRUCTIVE FRAUD**

**(*Against Defendant Womack*)**

96. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

97. As partners in the Business, Plaintiffs and Womack occupied a relationship of trust and confidence, and Womack owed Plaintiffs fiduciary duties of loyalty, care, candor, and fair dealing.

98. Womack used his position of trust and confidence, and his control over the Business, to benefit himself at Plaintiffs' expense, including by excluding Plaintiffs from the Business, seizing and diverting partnership property and goodwill, changing the credentials to the

Business's website, denying Plaintiffs their rightful share of profits, and exploiting Plaintiffs' Works, including through W.E. Marketing.

99. Womack sought and obtained a benefit for himself through these breaches of his position of trust and confidence, in a manner that was neither open, fair, nor honest.

100. Because Womack stood in a fiduciary relationship with Plaintiffs, Womack bears the burden of proving the openness, fairness, and honesty of his conduct, and he cannot meet that burden.

101. As a direct and proximate result of Womack's constructive fraud, Plaintiffs have been damaged in an amount to be proven at trial, and Womack's conduct was willful, wanton, and malicious, entitling Plaintiffs to punitive damages under N.C. Gen. Stat. § 1D-15.

**COUNT VIII**

**UNFAIR AND DECEPTIVE TRADE PRACTICES (N.C. Gen. Stat. § 75-1.1)**

**(*Against Defendant W.E. Marketing*)**

102. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

103. W.E. Marketing is engaged in commerce within the meaning of N.C. Gen. Stat. § 75-1.1.

104. W.E. Marketing committed unfair and deceptive acts or practices in or affecting commerce, including by: (a) passing off salsa sold under the Brand as originating with W.E. Marketing; (b) falsely representing to retailers, distributors, and consumers that it created and owns the Brand; and (c) filing USPTO Serial No. 99759919 with a false claim of ownership and a first-use date to which it was not entitled.

105. W.E. Marketing is a separate legal entity organized under Florida law. It was not a party to the partnership and deals with retailers, distributors, and consumers on its own account. Its conduct affects commerce beyond the internal affairs of any single business.

106. W.E. Marketing's conduct was immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiffs and to consumers, and possessed the tendency and capacity to deceive.

107. As a direct and proximate result of W.E. Marketing's unfair and deceptive acts, Plaintiffs suffered actual injury, including loss of control over the Brand, diversion of goodwill, and marketplace confusion.

108. Plaintiffs are entitled to recover their actual damages, trebled pursuant to N.C. Gen. Stat. § 75-16, together with attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

**COUNT IX**

**DECLARATORY JUDGMENT (28 U.S.C. §§ 2201–2202)**

**(*Against Defendants Womack and W.E. Marketing*)**

109. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

110. An actual, justiciable controversy exists between the parties regarding the existence and terms of the partnership, Plaintiffs' ownership interests, and ownership of the Registered Work, as evidenced by Womack's contention, through counsel, that no partnership existed, and by W.E. Marketing's assertion of rights in the Works through USPTO Serial No. 99759919.

111. Plaintiffs are entitled to a declaration that: (a) a partnership existed between Plaintiffs and Womack in the Business, in which Plaintiffs collectively hold a 45% interest; (b) Plaintiff Scott Nielsen is the sole author and owner of the copyrights in the Registered Work and Brand Materials, which were not works made for hire and were never assigned; and (c) Defendants hold no valid license, assignment, or other right in the Registered Work or Brand Materials.

112. A judicial declaration is necessary and appropriate to resolve the parties' rights and obligations and to guide their future conduct.

**COUNT X**

**JUDICIAL DISSOLUTION, WINDING UP, AND ACCOUNTING OF THE PARTNERSHIP**

**(Against Defendant Womack)**

113. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

114. As a result of Womack's exclusion of Plaintiffs, his refusal to account, and his diversion of partnership assets and opportunities, it is not reasonably practicable to carry on the partnership business in conformity with the partnership agreement, and Womack has engaged in conduct making it not reasonably practicable to continue in partnership with him. N.C. Gen. Stat. § 59-62

115. Plaintiffs are entitled to dissolution and winding up of the partnership, a full accounting of all partnership assets, liabilities, revenues, expenses, and distributions from inception to the present, and distribution to Plaintiffs of their rightful share of partnership property and profits, pursuant to N.C. Gen. Stat. §§ 59-52, 59-62, and 59-68 et seq. and the Court's equitable powers.

116. As a direct and proximate result of Womack's conduct, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT XI
## CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT
## (17 U.S.C. §§ 106, 501)
**(*Plaintiff Nielsen Against Defendant Womack*)**

117. Plaintiff Nielsen incorporates the foregoing paragraphs as if fully set forth herein.

118. Plaintiff Nielsen is the sole legal and beneficial owner of a valid, registered copyright in the Registered Work.

119. Womack knew of W.E. Marketing's infringing reproduction and use of the Registered Work and the Derivative Versions, and materially contributed to, induced, and caused that infringement, including by directing the creation of the Derivative Versions and moving the Business and the Registered Work to W.E. Marketing.

120. As the owner and controlling member of W.E. Marketing, Womack had the right and ability to supervise and control the infringing activity, and he received a direct financial benefit from it.

121. Womack is therefore contributorily and vicariously liable for W.E. Marketing's infringement.

122. As a direct and proximate result, Plaintiff Nielsen has suffered damages and Womack has profited, entitling Plaintiff Nielsen to actual damages and Womack's profits

under 17 U.S.C. § 504(b), costs under 17 U.S.C. § 505, and injunctive relief under 17 U.S.C. §§ 502–503.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A. On Count I, awarding compensatory damages against Womack in an amount to be proven at trial;

B. On Count II, ordering a full accounting of the partnership's books, records, revenues, expenses, distributions, and assets from inception to the present, and awarding Plaintiffs their rightful share of profits and assets, together with compensatory damages in an amount to be proven at trial;

C. On Count III, awarding compensatory and punitive damages against Womack, including punitive damages under N.C. Gen. Stat. § 1D-15;

D. On Count IV, in the alternative, awarding restitution for the reasonable value of the benefits conferred and imposing a constructive trust over Plaintiffs' proportionate share of the Business and any assets, accounts, domain, and goodwill traceable to Plaintiffs' contributions;

E. On Count V, awarding Plaintiff Nielsen his actual damages and Defendants' profits under 17 U.S.C. § 504(b), together with costs under 17 U.S.C. § 505; entering temporary, preliminary, and permanent injunctions under 17 U.S.C. § 502 barring further reproduction, display, distribution, or use of the Registered Work or any Derivative Version; and ordering impoundment and destruction of infringing materials under 17 U.S.C. § 503;

F. On Count VI, entering injunctive relief and awarding damages, W.E. Marketing's profits, costs, and attorneys' fees pursuant to 15 U.S.C. §§ 1116–1117;

G. On Count VII, awarding compensatory damages in an amount to be proven at trial, and punitive damages under N.C. Gen. Stat. § 1D-15;

H. On Count VIII, awarding Plaintiffs' actual damages, trebled pursuant to N.C. Gen. Stat. § 75-16, together with attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1;

I. On Count IX, entering a declaratory judgment that: (a) a partnership existed between Plaintiffs and Womack in the Business, in which Plaintiffs collectively hold a 45% interest; (b) Plaintiff Scott Nielsen is the sole author and owner of the copyrights in the Registered Work and Brand Materials, which were not works made for hire and were never assigned; and (c) Defendants hold no valid license, assignment, or other right in the Registered Work or Brand Materials;

J. On Count X, ordering the dissolution and winding up of the partnership, a full accounting of all partnership assets, liabilities, revenues, expenses, and distributions from inception to the present, and distribution to Plaintiffs of their rightful share of partnership property and profits, pursuant to N.C. Gen. Stat. §§ 59-52, 59-62, and 59-68 et seq. and the Court's equitable powers;

K. On Count XI, awarding Plaintiff Nielsen his actual damages and Womack's profits under 17 U.S.C. § 504(b), costs under 17 U.S.C. § 505, and injunctive relief under 17 U.S.C. §§ 502–503;

L. If a trademark registration issues on USPTO Serial No. 99759919, entering an order canceling or otherwise addressing the registration under 15 U.S.C. § 1119

M. Directing the USPTO under 15 U.S.C. § 1119 to refuse registration of, or to cancel any registration issuing from, USPTO Serial No. 99759919, on the ground that W.E. Marketing was not the owner of the applied-for mark when it filed and the application is void;

N. Awarding pre- and post-judgment interest, costs, and attorneys' fees as permitted by law; and

O. Awarding such other and further relief as the Court deems just and proper.

Signed November 24, 2026

/s/James P.A. Twisdale

James P.A. Twisdale
Twisdale Law, PC
324 E. St. John Street Suite B2
Spartanburg, SC 29302
704-995-6202
patrick@twisdalelaw.com
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION: NO. _________**

| | |
|---|---|
| SCOTT NIELSEN and TROY GRAVES,<br><br>Plaintiffs,<br><br>v.<br><br>HARRY M. WOMACK, individually and d/b/a HALLELUJAH HARRY'S SALSA; and W.E. MARKETING, LLC, a Florida limited liability company,<br><br>Defendants. | **VERIFICATION** |

I, Scott Nielsen, am a Plaintiff in this action, am over eighteen years of age, and am competent to make this verification. I have read the foregoing Complaint, and the factual allegations in it are true and correct of my own personal knowledge, except for those allegations stated upon information and belief, which I believe to be true. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 11, 2026.

[signature]
Scott Nielsen

STATE OF NORTH CAROLINA
COUNTY OF Haywood

I, Wendy Rhodes Worley, a Notary Public for the County and State above, certify that Scott Nielsen personally appeared before me this day. Having first been duly sworn by me, he stated that he has read the foregoing Complaint and that the facts in it are true of his own knowledge, except for those matters stated upon information and belief, which he believes to be true. He then signed the foregoing Verification in my presence.

Date: November 11, 2026

Wendy Rhodes Worley
Official Signature of Notary
Notary's Printed Name: Wendy Rhodes Worley

My commission expires: 03/12/2031
[Official Seal]

WENDY RHODES WORLEY
COMMISSION EXPIRES
NOTARY
PUBLIC
MARCH 12, 2031
HAYWOOD COUNTY, N.C.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION: NO. _________**

| | |
|---|---|
| SCOTT NIELSEN and TROY GRAVES,<br><br>Plaintiffs,<br><br>v.<br><br>HARRY M. WOMACK, individually and d/b/a HALLELUJAH HARRY'S SALSA; and W.E. MARKETING, LLC, a Florida limited liability company,<br><br>Defendants. | **VERIFICATION** |

I, Troy Graves, am a Plaintiff in this action, am over eighteen years of age, and am competent to make this verification. I have read the foregoing Complaint, and the factual allegations in it are true and correct of my own personal knowledge, except for those allegations stated upon information and belief, which I believe to be true. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 11, 2026.

[signature]
Troy Graves

STATE OF NORTH CAROLINA
COUNTY OF Haywood

I, Wendy Rhodes Worley, a Notary Public for the County and State above, certify that Troy Graves personally appeared before me this day. Having first been duly sworn by me, he stated that he has read the foregoing Complaint and that the facts in it are true of his own knowledge, except for those matters stated upon information and belief, which he believes to be true. He then signed the foregoing Verification in my presence.

Date: November 11, 2026

[signature] Wendy Rhodes Worley
Official Signature of Notary 03/12/2031
Notary's Printed Name: Wendy Rhodes Worley
My commission expires: 03/12/2031
[Official Seal]

WENDY RHODES WORLEY
COMMISSION EXPIRES
NOTARY
PUBLIC
MARCH 12, 2031
HAYWOOD COUNTY, N.C.

**Registration Number**
# VA 2-527-443
**Effective Date of Registration:**
August 27, 2026
**Registration Decision Date:**
October 15, 2026

## Title

**Title of Work:** Hallelujah Harry's Salsa Label

## Completion/Publication

**Year of Completion:** 2024
**Date of 1st Publication:** November 15, 2024
**Nation of 1st Publication:** United States

## Author

- **Author:** Scott Nielsen
  **Author Created:** 2-D artwork
  **Work made for hire:** No
  **Citizen of:** United States
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** Scott Nielsen
40 Indian Trace Rd, Maggie Valley, NC, 28751, United States

## Rights and Permissions

**Organization Name:** Twisdale Law, PC
**Email:** office@twisdalelaw.com
**Address:** 1208 John B White Sr Blvd
Spartanburg, SC 29306 United States

## Certification

**Name:** James Twisdale

**Date**: August 27, 2026

---

**Copyright Office notes:** Basis for Registration: Registration is based on the artwork in the deposit. Copyright does not protect names, titles, short phrases or slogans. 37 CFR 202.1

Twisdale Law

Patrick Twisdale, Attorney*

29 N Market St.,
Suite 402
Asheville, NC 28801

*Licensed in North Carolina, South Carolina, Tennessee, Virginia, and U.S. Patent and Trademark Office

Corporate Offices

324 E. St. John Street.,
Suite B-2
Spartanburg, SC 29302

August 10, 2026

Harry M. Womack
Hallelujah Harry's Salsa
50 Destination Dr.,
Waynesville, NC 28786
harrywomack007@gmail.com

**VIA EMAIL AND CERTIFIED MAIL**

**Re: Ownership Interests of Scott Nielsen and Troy Graves in Hallelujah Harry's Salsa; Demand for Financial Records and Immediate Resolution**

Dear Mr. Womack:

This firm represents Scott Nielsen and Troy Graves regarding their ownership interests in the business known as Hallelujah Harry's Salsa (the "Business"). This letter constitutes a formal demand.

My clients collectively hold a 45% ownership interest in the Business. That interest arises from the mutual consent of you and my clients, from the parties' agreement, from their course of dealing, and from my clients' substantial contributions to creating and operating the Business. Over the life of the Business, my clients have devoted thousands of hours and significant personal funds to work that includes developing and refining the salsa recipe and its formulations; designing and producing the branding, logo, front and back labels, artwork, packaging, and promotional materials; building, hosting, and administering the website and the Facebook and Instagram accounts; creating advertisements, signage, and sales content; securing and servicing retail contracts, including with Ingles and other retailers; conducting in store tastings; managing orders and deliveries; introducing the bottler or co packer; and paying out of pocket for domain and hosting fees, label production, design software and subscriptions, and other business costs. This work built the Business, its goodwill, its customer relationships, and its revenue.

Notwithstanding my clients' ownership and their central role in the Business, you have excluded them from the Business and from any information about it. My clients asked you directly for basic

ownership and financial information, and you refused to provide it and refused to engage with them. You have also changed the credentials to the Business's website and cut off my clients' access to property they built, including but not limited to my clients' copyright material. This conduct is unacceptable and will not be permitted to continue.

Accordingly, and so that my clients may receive fair compensation for their work and their rightful share of the profits of the Business, **we demand that you produce, within fourteen (14) days of the date of this letter**, complete and accurate copies of all books and records of the partnership, including but not limited to the following:

1. All financial statements, profit and loss statements, balance sheets, and ledgers for the Business from inception to the present;
2. All bank and credit card account statements for any account used for the Business, and records identifying all account signatories;
3. All records of sales, orders, invoices, and receipts, including all Ingles and other retailer accounts;
4. All records of revenues, expenses, distributions, salaries, draws, and reimbursements paid to or by any person;
5. All tax returns filed by or on behalf of the Business, including any partnership returns, Schedule K 1s, and Forms 1099;
6. All formation, organizational, and governance documents for any entity through which the Business operates, and all records reflecting ownership interests;
7. All contracts and agreements with the bottler or co packer, suppliers, retailers, and any third parties, and records reflecting who obtained the UPC code;
8. All records reflecting registrant and account ownership for the Business's domain, website, hosting, and social media accounts.

The purpose of this demand is straightforward: my clients are entitled to an accounting and to their fair share of the profits their labor and investment generated. The records above are necessary to determine the amount owed to them.

You are further directed to immediately preserve all documents, communications, files, metadata, and electronically stored information relating to the Business, my clients, their ownership interests, and their contributions. This includes emails, text messages, social media messages, financial records, design and artwork files, and website and account records. You must not delete, alter, destroy, or overwrite any such materials, and you must suspend any automatic deletion processes. Any destruction or alteration of relevant evidence will be pursued to the fullest extent available, including through appropriate spoliation remedies.

My clients genuinely wish to resolve this matter amicably and without the expense and disruption of litigation. To that end, within the same fourteen (14) day period, you or your counsel must contact me to confirm production of the partnership records demanded above and to arrange a meeting to address my clients' ownership interests, their share of the profits, and a fair resolution.

If you fail to produce the demanded records, fail to restore my clients' access, and fail to come to the table within fourteen (14) days, my clients are prepared to proceed with litigation and to pursue all available legal and equitable remedies without further notice.

Those remedies include claims for breach of the parties' agreement, breach of fiduciary duty, an action for a full accounting, unjust enrichment, quantum meruit, and the imposition of a constructive trust over the Business, its assets, accounts, domain, and goodwill, together with all available damages, interest, and costs.

This is your opportunity to resolve this matter cooperatively, and my clients sincerely hope you will take it. They would greatly prefer an amicable resolution, but they will not hesitate to enforce their rights in court if you do not comply. Nothing in this letter waives any of my clients' rights, claims, remedies, or defenses, all of which are expressly reserved.

We expect your response no later than fourteen (14) days from the date of this letter.

Sincerely,

Patrick Twisdale
Attorney

HYDE BROWN WILSON
ATTORNEYS AT LAW

August 24, 2026

Mr. Patrick Twisdale
Twisdale Law
29 N. Market Street, Suite 402
Asheville, NC 28801

Sent via first class mail and email to office@twisdalelaw.com

**RE: Correspondence Dated August 10, 2024**

Dear Mr. Twisdale,

I hope this letter finds you doing well. Please be advised that I represent Harry Womack with respect to the matters raised in your correspondence dated August 10, 2026.

My client has informed me that the information provided to you by your clients is not accurate. Your clients do not own any interest in any company which my client owns. Accordingly, your clients would not be entitled to any of the documentation or records requested in your letter.

If your clients possess any documents which establish an ownership interest in my client's company, please forward those documents to me for review.

My client does acknowledge and appreciate the marketing efforts undertaken by Mr. Nielsen on behalf of my client's salsa company. In that light, my client would certainly be open to a discussion about compensation for the same. This acknowledgment, however, should not be construed as recognizing any ownership interest in my client's salsa company.

I look forward to your response. Until then, I will remain,

Sincerely,

Samuel P. Hyde

Hyde Brown Wilson, P.A.
675 North Main Street | Waynesville, NC 28786
828.452.2556 | www.hbwlaw.com

VETERAN OWNED • MAGGIE VALLEY, NC • 941-726-1084

(/)

HOME ★ OUR STORY ★ OUR SALSA ★ RECIPES ★ WHERE TO BUY ★ THE SONG ★ WHOLESALE ★ CONTACT

OUR SALSA(/PRODUCTS/)




*"I started this salsa in my kitchen... and y'all made it something special."*
*- Harry*

# BOLD FLAVOR. HOMEMADE HEART.

Veteran created in Maggie Valley NC with real ingredients and a whole lot of love.

OUR SALSA(/PRODUCTS/) FIND A STORE(/WHERE-TO-BUY/)

"TEXAS ROOTS – MOUNTAIN PROUD – HALLELUJAH FLAVOR"

VETERAN OWNED | CREATED IN MAGGIE VALLEY NC | FRESH INGREDIENTS | NO PRESERVATIVES | MADE WITH CARE




THE MAN. THE STORY. THE SALSA.

## Meet Hallelujah Harry

From Vietnam to the mountains of North Carolina, my journey has taken some turns. But one thing has always been true — I love bringing people together through good food, great music, and even better company.

This salsa is my way of saying thank you for supporting a dream that started in a little kitchen and grew because of y'all.

READ MY STORY(/ABOUT/)

## ★ OUR SALSA ★




### MILD

Created with just the right blend of tomatoes, peppers, onions, and spices — a flawless balance of heat, zestiness, and smokiness. The perfect combination for everyone at the table.

VIEW DETAILS(/PRODUCTS/)




### HOT

Crafted with the perfect blend of tomatoes, onion, spices, peppers, and habanero peppers — heat for your taste buds without overpowering the zesty taste. A true culinary masterpiece.

VIEW DETAILS(/PRODUCTS/)




### FIND A STORE

We're in stores all across Western North Carolina.

FIND A STORE(/WHERE-TO-BUY/)

### LISTEN TO THE SONG

Listen to "Hallelujah Harry's Salsa" and find out how it all began.

LISTEN NOW(/HARRYS-SONG/)




**STAY IN THE LOOP** Get updates, recipes, and special offers!

Enter your email address SUBSCRIBE

Veteran-owned salsa from Maggie Valley, NC.

**QUICK LINKS**

- Home (/)
- Our Story (/about/)
- Our Salsa (/products/)
- Recipes (/recipes/)
- Where to Buy (/where-to-buy/)
- The Song (/harrys-song/)
- Wholesale (/wholesale/)
- Contact (/contact/)

**CUSTOMER CARE**

- Contact (/contact/)
- Wholesale (/wholesale/)
- Where to Buy (/where-to-buy/)
- Privacy (/legal/privacy-policy/)
- Cookies (/legal/cookie-policy/)

**FOLLOW US**

- Facebook (https://www.facebook.com/HallelujahH
- 941-726-1084 (tel:+19417261084)

CREATED IN MAGGIE VALLEY NC

© 2026 Hallelujah Harry's Salsa. All rights reserved. Privacy (/legal/privacy-policy/) Asheville web design (https://www.whitefoxstudios.net/services/web-design/asheville/) by White Fox Studios

VETERAN OWNED • MAGGIE VALLEY, NC • 941-726-1084

(/)

HOME ★ OUR STORY ★ OUR SALSA ★ RECIPES ★ WHERE TO BUY ★ THE SONG ★ WHOLESALE ★ CONTACT

OUR SALSA(/PRODUCTS/)

# OUR STORY

*A life of service.*
*A passion for people.*
*A salsa made with love.*

From serving our country to serving our community, Harry's journey has always been about hard work, loyalty, and bringing people together. This is the story behind Hallelujah Harry's Salsa.




## ABOUT HALLELUJAH HARRY'S SALSA

From the U.S. Army's First Aviation Brigade in Vietnam to a 47-year career founding WWRV Sales and Services, then a Maggie Valley outdoor kitchen — this is how Hallelujah Harry's Salsa was born. Friends kept asking for more of that homemade flavor, and a veteran-owned salsa made with heart found its way onto store shelves.

### From Texas roots to a mountain table. Meet the man behind the jar.



### VIETNAM VETERAN

Harry proudly served in the U.S. Army's First Aviation Brigade during the Vietnam War — a chapter of service that still shapes his love of country and community.



### A LIFE OF WORK

After returning home, Harry built a 47-year career in the motorhome industry. He founded WWRV Sales and Services on the values of honesty, integrity, and dedication — always putting his customers first.



### SEMI-RETIREMENT & A NEW CHAPTER

Semi-retirement in Maggie Valley gave Harry — a lifelong food enthusiast raised in Texas — more time in his outdoor kitchen, where his love of cooking and creating salsa took center stage.




### FROM KITCHEN TO JAR

Friends and family couldn't get enough of that homemade flavor. This Vietnam veteran learned cooking, bottling, the water bath, the cooldown, and filling each jar. Hallelujah Harry's Salsa was born — American-made, veteran-owned, and made with heart.



### FIRST RETAIL LOCATIONS IN MAGGIE VALLEY

A hometown gift shop and Haywood Ace Hardware gave Harry a chance, and Hallelujah Harry's Salsa was proudly and officially "for sale" in Maggie Valley.



### GROWING ACROSS WESTERN NORTH CAROLINA

Today you'll find jars at Ingles, neighborhood stores, Ace Hardware, and farmers markets from Maggie Valley to Waynesville, Asheville, and beyond. A loyal following of salsa fans keeps asking for more.



### THE FUTURE

We're grateful for every customer and every store that believes in Hallelujah Harry's Salsa — crafted with pride, bold flavors, and patriotism. Stay tuned. The best is still ahead.

*"The salsa ain't just made in a kitchen.*
*It's made with heart, hard work, and a whole lot of gratitude.*
*Thank you for being part of the journey."*

*— Harry*

Veteran-owned salsa from Maggie Valley, NC.

QUICK LINKS

- Home (/)
- Our Story (/about/)
- Our Salsa (/products/)
- Recipes (/recipes/)
- Where to Buy (/where-to-buy/)
- The Song (/harrys-song/)
- Wholesale (/wholesale/)
- Contact (/contact/)

CUSTOMER CARE

- Contact (/contact/)
- Wholesale (/wholesale/)
- Where to Buy (/where-to-buy/)
- Privacy (/legal/privacy-policy/)
- Cookies (/legal/cookie-policy/)

FOLLOW US

- Facebook (https://www.facebook.com/HallelujahH
- 941-726-1084 (tel:+19417261084)

CREATED IN MAGGIE VALLEY NC

© 2026 Hallelujah Harry's Salsa. All rights reserved. · Privacy (/legal/privacy-policy/) · Asheville web design (https://www.whitefoxstudios.net/services/web-design/asheville/) by White Fox Studios

VETERAN OWNED • MAGGIE VALLEY, NC • 941-726-1084

(/)

HOME ★ OUR STORY ★ OUR SALSA ★ RECIPES ★ WHERE TO BUY ★ THE SONG ★ WHOLESALE ★ CONTACT

OUR SALSA(/PRODUCTS/)

# OUR SALSA

*Two flavors. Packed with flavor.*




## MILD SALSA

Created with just the right blend of tomatoes, peppers, onions, and spices — a flawless balance of heat, zestiness, and smokiness. The perfect combination for everyone at the table.

Ingredients: Diced tomatoes, onions, peppers, chili pequins, sea salt, natural spices, citric acid.

Nutrition (per 2 Tbsp / 30g): 10 calories · 0g fat · 120mg sodium (5% DV) · 1g fiber · 1g sugars. Net wt 16 oz (454g).

FIND A STORE(/WHERE-TO-BUY/)




## HOT SALSA

Crafted with the perfect blend of tomatoes, onion, spices, peppers, and habanero peppers — heat for your taste buds without overpowering the zesty taste. A true culinary masterpiece.

Ingredients: Diced tomatoes, onions, peppers, chili pequins, sea salt, natural spices, citric acid.

Nutrition (per 2 Tbsp / 30g): 10 calories · 0g fat · 120mg sodium (5% DV) · 1g fiber · 1g sugars. Net wt 16 oz (454g).

FIND A STORE(/WHERE-TO-BUY/)

## *Can't decide?*

Find Hallelujah Harry's Salsa at a retailer near you or taste the difference.

FIND A STORE (/WHERE-TO-BUY/)

CREATED IN NORTH CAROLINA MAGGIE VALLEY

MADE WITH REAL INGREDIENTS

Tomatoes | Peppers | Onions | Garlic | Spices | Nothing Artificial

Veteran-owned salsa from Maggie Valley, NC.

**QUICK LINKS**

- Home (/)
- Our Story (/about/)
- Our Salsa (/products/)
- Recipes (/recipes/)
- Where to Buy (/where-to-buy/)
- The Song (/harrys-song/)
- Wholesale (/wholesale/)
- Contact (/contact/)

**CUSTOMER CARE**

- Contact (/contact/)
- Wholesale (/wholesale/)
- Where to Buy (/where-to-buy/)
- Privacy (/legal/privacy-policy/)
- Cookies (/legal/cookie-policy/)

**FOLLOW US**

- Facebook (https://www.facebook.com/HallelujahH
- 941-726-1084 (tel:+19417261084)

CREATED IN
MAGGIE VALLEY NC

© 2026 Hallelujah Harry's Salsa. All rights reserved. · Privacy (/legal/privacy-policy/) · Asheville web design (https://www.whitefoxstudios.net/services/web-design/asheville/) by White Fox Studios